# AFFIDAVIT

I, Martin Gold, do swear, depose and say:

1. My birth date is January 18, 1945, and I understand the meaning of the oath.

2. I am licensed to practice law in the State of Connecticut.

3. I am a partner in the law firm of Butler, Norris & Gold ("the Firm"), which has its offices at 254 Prospect Avenue in Hartford, Connecticut. The Firm presently consists of five partners, one contract partner and five associates. The partners have an ownership interest in the Firm; the associates are employees, as is the contract partner. The contract partner has no ownership interest in the Firm.

4. Although the Firm provides many different legal services, the primary work of the Firm is personal injury lawsuits. A significant amount of the revenue of the Firm comes from personal injury lawsuits.

5. In addition to representing plaintiffs in personal injury lawsuits, the Firm also represents defendants in criminal proceedings, prepares wills and provides estate planning, handles trusts and estates, and provides business or corporate law services to small and mid-size companies in Connecticut.

6. The plaintiff was hired in 1995 as an associate. I had known the plaintiff for a number of years, both on a personal and professional level. I learned in 1995 that the attorney, with whom the plaintiff was working, was retiring. I also had reason to believe that plaintiff

either could not or would not continue the practice of the retiring attorney. Many attorneys in similar circumstances would simply take over the practice of the retiring attorney; however, the plaintiff chose not to do so.

7. Although I knew that plaintiff, despite a Yale law degree and more than thirty years of legal experience, would not bring in any significant business to the Firm, I nevertheless believed that he could make a contribution to our Firm, and decided to hire plaintiff.

8. When plaintiff was hired, I knew that he had not had a lot of trial experience. As the most lucrative parts of our practice are personal injury and criminal work, most of our attorneys must be able to do trial work. It is the ability to successfully take a case to trial that prompts appropriate settlements and plea agreements.

9. Although plaintiff did not handle trial work except on rare occasions, I thought he could assist other attorneys in research projects or other non-trial work such as zoning and appellate matters. Other attorneys could call upon plaintiff to research and write a legal memorandum on a particular issue of law that could arise in their cases.

10. After plaintiff was hired, he worked with Alan Rome, who was a partner of the Firm, and Alan Reisner, who was an associate of the Firm at that time. Both Mr. Rome and Mr. Reisner are brothers-in-law of mine.

11. Both Mr. Rome and Mr. Reisner handled many personal injury matters. Plaintiff supported their work.

12. There came a time in the Summer of 2000 when Mr. Rome left the Firm and joined with a former associate of the Firm, Mr. Katz, to start a new law practice, Rome & Katz. Mr. Rome had handled a significant amount of the Firm's personal injury cases. He took many Firm files with him. Mr. Rome's departure was neither pleasant nor easy.

13. Although plaintiff did a significant amount of work with Mr. Rome and Mr. Rome took a significant number of files or cases with him, he did not ask plaintiff to join his firm.

14. Regardless of the reasons why Mr. Rome did not take plaintiff with him when he left the Firm, Mr. Rome's departure left the plaintiff with a reduced workload.

15. Mr. Rome's departure and his partnership with Mr. Katz raised several issues with the Firm. Though litigation was threatened between the Firm and Mr. Rome, the parties negotiated a settlement. During the negotiations that lead to the settlement, Mr. Rome was represented by Mr. Eliot Gersten.

16. After plaintiff was terminated from the Firm, he entered into some arrangement with Mr. Rome by which plaintiff either became employed or associated with Mr. Rome's law firm.

17. At all times during plaintiff's employment with the Firm, he was an associate.

BEJ/32036/4/663153v1
01/29/04-HRT/

18. The probate of Mrs. Hopfer's estate was not handled by the Firm, nor was the estate in any way related to Mr. Ellis' employment by the Firm or the termination thereof.

_____
MARTIN GOLD

STATE OF CONNECTICUT:    SS: Hartford

COUNTY OF HARTFORD

Before me, the undersigned Notary Public, personally appeared MARTIN GOLD, who, upon being duly sworn, states that he has read the contents of the foregoing Affidavit and find them to be true and correct to the best of his knowledge and belief.

SWORN TO and subscribed before me this 29th day of January, 2004.

_____
NOTARY PUBLIC
COMMISSIONER OF THE COURT

Nancy M. Marrero
NOTARY PUBLIC
State of Connecticut
My Commission Expires 9/30/06