FILED
2004 FEB 18 P 2:10
U.S. DISTRICT COURT
HARTFORD, CT.

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOEL M. ELLIS
Plaintiff,

vs.

MARTIN P. GOLD
And BUTLER, NORRIS & GOLD
Defendants

CIVIL ACTION NO. 3:03CV0669 (CFD)

February 17, 2004

**MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR PROTECTIVE ORDER AND IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL**

Plaintiff responds to the motion for protective order filed by defendants, Martin P. Gold and Butler, Norris and Gold (dated January 29, 2004) and seeks an order to compel answers to interrogatories and production of documents responsive to requests.

A. Background.

Plaintiff claims defendants have violated the protections afforded him under the Age Discrimination in Employment Act, 29 U.S.C. sec. 621, et seq, [ADEA] and the Connecticut Fair Employment Act, C.G.S. sec. 46a-60(a)(1), et seq. [CFEPA]. In brief, plaintiff alleges that defendant Butler, Norris and Gold [the "Firm' or "BNG"] reduced his hours from a five day work week to a three day work week because of claimed budgetary problems occasioned by a lack of work, i.e., revenue. Plaintiff was terminated about four months later, based upon a purported "lack of work". (Complaint, paragraphs 15, 16, 19, 20, 22)

Plaintiff's claim is that he was not terminated for lack of work/revenues, but because the work he normally had been doing and would have been doing was being assigned to younger associates and that he was replaced by the younger associates who assumed his

workload following his termination. Plaintiff submitted this claim to the CHRO and the CHRO found that probable cause existed.

B. The Disputed Requests Seek Information Which May Lead to the Discovery Of Evidence Admissible at Trial.

1. The information relates to the credibility of the underlying claim and the ability to prove the reasons for termination were a pretext for the violation of the Age Discrimination Act.

Plaintiff contends that the purported reason given for his termination, i.e., a decline in revenues/lack of work was a pretext; defendant's finances and credibility about its finances are in issue. The information sought is relevant to his claim and either admissible or reasonably calculated to lead to the discovery of admissible evidence. F.R.C.P. 26 (b)(1). Case law supports plaintiff's claim. Palmer v. Reader's Digest Association, Inc., 125 FRD 445, 446 (S.D.N.Y. 1988) (In ADEA case, discharged employees were entitled to financial statements of privately held company in order to discover information relevant to their burden of demonstrating that company's purported reason for their discharge, decline in profits, was pretextual.). Other cases have similarly held, e.g., see, Hefenider v. United Grocers, Inc., 1988 WL 141553 (D.Or., 1988); Hills v. Chambers, 1998 WL 1181767 (Mass. Super., 1998) (financial records discoverable to prove false reasons for firing in a fraud case); Lyoch v. Anheuser-Busch Companies, 74 FEP Cases 691,693 694,695 (DCED, Missouri, 9/11/95) (In civil rights/ADEA case, where plaintiff alleged she was unable to penetrate to a Grade Level 25, and sought in an interrogatory information including salaries of all employees in and above Grade Level 25, held, that the information was discoverable.); Holley v. Pansophic Systems, 64 FEP Cases 366, 368(USDC, ND Ill. 10/25/93) (In sex discrimination case, plaintiffs permitted to discover salary records of positions not held by plaintiffs since it would lend

credibility to plaintiffs' allegations of similar discrimination at the middle management level.); and, see, 10 Federal Procedure, Lawyers Edition, Sec. 26:93 (Information financial status; tax returns) (Where the financial status of the defendant is at issue, its profits and losses and tax returns are discoverable under FRCP 26 (b).)

As set forth below each of the items sought by plaintiff and resisted by the defendants relate to the need to demonstrate the pretext for the stated reasons for termination.

DISPUTED ITEMS:

**Document Request (12)** *The file for the grandmother ("MA") showing the "gift" to Martin P. Gold including all probate documents, state returns, state estate tax returns, federal estate tax returns and any penalties and error adjustments.*

This request related to the file of Kathe Hopfer, the grandmother of Attorney Martin P. Gold's wife. The defendants initially objected to request no. 12 on the ground that the requested file was not one worked on by the plaintiff [and thus it was irrelevant]. There was no claim that BNG did not possess the requested documents. See, e.g., defendants' Memorandum in support of its motion for protective order at page 3) Currently, defendants contend "The probate of Mrs. Hopfer's estate was not handled by the Firm . . . ." (Affidavit of Defendant Martin Gold at ¶18) While one might question the defendants' need to seek a protective order on a file the defendants do not possess, the defendants do seek such relief because the local Probate Records reveal that the firm did, in fact, handle the probate file of Kathe Hopfer. (see attached Exhibit A) [1] Initially, this request intended to obtain information which related to

[1] The Bloomfield Probate Court reveals a filing on April 7, 1997 of an "Affidavit In Lieu Of Administration" for Kathe Hopfer who died on December 16, 1996. The petitioner was her daughter and defendant-affiant Martin Gold accepted her oath on March 26, 1997. The Department of Revenue Services filed a"Succession Tax Assessment" on June 18, 2001 and addressed to P. Michael Margolis, of Butler, Norris and Gold. Attorney Margolis is a partner of Defendant BNG. The Department of Revenue Services addressed Attorney P. Michael Margolis indicating its acceptance of final payment on December 23, 2002.

the financials of the firm for performing work for Kathe Hopfer, however, the contradiction between the Probate Records and the affidavit submitted by Attorney Gold allows the conclusion that defendant Gold fabricated an affidavit to support defendants' motion for a protective order, leading to the discovery of evidence in the Hopfer files that may be admissible within the meaning of Rule 26.

Besides the potential use for impeachment purposes, the probate document entitled "Succession Tax Assessment", states that there was a "Gift Tax Credit" of $18,618.00 which was deducted from the succession tax that was due. At the time of Kathe Hopfer's death, the gift tax rate for gifts over $200,000 was $7,500 plus 6% of the excess over $200,000. Under this formula [and the fact that there was an exclusion for the first $10,000], a gift tax of $18,618 means that the gift was around $400,000.

Plaintiff's affidavit sets forth that Kathe Hopfer was a Holocaust survivor who had a property reparations claim concerning property in East Germany; that she was eligible to participate in the Holocaust reparations program; that Attorney Martin P. Gold, on her behalf, retained the services of Attorney David J. Rowland of New York City, an attorney whose expertise included East Germany property claims; that Attorney Rowland was successful in obtaining a substantial recovery; that he was paid a substantial fee; that Attorney Gold also claimed part of the recovery but sought payment in the form of a gift, which would otherwise be revenue belonging to BNG.

Thus, the discovery that is sought aims at confirming this diversion of funds by Attorney Martin P. Gold which otherwise would have contributed to the finances of BNG, a key issue in this case. This diversion should be viewed together with plaintiff's request for production no. 10, discussed below, which seeks information about another method of

diverting funds from BNG which otherwise would have contributed to its financial well being. As discussed above, the finances of BNG are relevant to the allegations of plaintiff's complaint.

These financial diversions also are relevant to the allegations in paragraph 30 of the complaint which allege, in effect, that defendant's assertion of budgetary problems were deceitful and dishonest, and that such conduct was consistent with defendant's pattern and practice of engaging in other deceitful and dishonest business behavior. Thus, the information sought about Kathe Hopfer's affairs [and the rent paid by BNG to Attorney Gold's wife, see discussion of request no. 10, below] is relevant in support of plaintiff's claims.

> **Document Request (10)** *The periodic rent paid by Butler, Norris & Gold to the owner of the 254 Prospect Avenue, Hartford, Connecticut property.*

Again, plaintiff claims that any suggestion that the costs of carrying him on the payroll outweighed his worth to the employer is simply a pretext and falsehood designed to cover up the discriminatory action. There is no dispute that the owner of the premises occupied by the employer is controlled by defendant Gold (see attached affidavit of Plaintiff). Thus, establishing the amount of rent and its terms paid indirectly to an "insider", who otherwise claims financial issues prompted the termination of plaintiff, allows plaintiff to show this diversion of resources otherwise available to the defendants who claimed relative poverty.

> **Document Request (4)** *Produce any and all records reflecting the following information: (1)* [No objection – n ot applicable to this motion]. *(2) All financial records, income statements, salaries, periodic draws and bonuses for all partners and associates from and including 2001 to the present . (3) All fringe benefits available to all partners, associates and non-legal employees from and including 2001 to the present. (4 )Salaries of all non-attorney employees from and including 2001 to the present.*

> **Interrogatory Request (4)** *Identify any records that you maintain regarding any of the following information: (a) Names and addresses of all employees and/or independent*

*agents or any others receiving compensation derived from the business of the defendant ... (d) Identify any income generated by each person.*

Defendants claim that plaintiff may request financial information only as to employees who are similarly situated in all material respects and , thus, plaintiff is not entitled to financial information as to partners and non-clerical staff. Neither Curry v. Morgan Stanley & Co., 193 F.R.D. 168 (S.D.N.Y. 2000) or Swarensky-Bilow v. Much Shelist Freed Denenberg Ament & Rubenstein, P.C., 277 F.3d 882 (7th Cir. 2001) which apply the above theory should apply in this case as urged by defendants. (See, Memorandum at pages 5 & 7) . There is no claim of discrimination in the payments of salary and monetary benefits as between plaintiff and other employees as was case in the decisions relied on by the defendants. Instead plaintiff's claim is that BNG's claimed inability to afford his services was a pretext and plaintiff is entitled to the requested discovery regarding lawyer associates as well as partners and non-legal employees or others. Palmer, supra; Hefenider, supra; Hills, supra; Lyoch, supra; Holley, supra; 10 Federal Procedure, Lawyers Edition, supra. Moreover, as defendants have to acknowledge, there are other Gold family members on the payroll in other than an associate attorney capacity. This is discovery and not trial and the test is whether the plaintiff can show the defendants used this close family connection to divert income which would not otherwise be available to them in a less controlled entity in order to demonstrate that the purported business reasons for terminating the plaintiff were a pretext for the age related and discriminatory motives.

**Document Request (11)** *Butler, Norris & Gold income tax returns for 2001 and 2002 and, when available, for 2003.*

**Interrogatory Request 4(e)** *Identify any and all financial records, income tax statements, cash flow balances, profit and loss statements, and/or any other*

*documentation relating to the financial condition of the law firm between the date plaintiff was hired and June 2003.*

For the reasons given above in regard to request for production no. 4, the Firm's income tax returns are discoverable.

Interrogatory 4 (e) seeks an identification of records not the production of records. Despite BNG's ploy of characterizing the interrogatory as a request for it to list every bill, receipt, etc., that is not the nature of the interrogatory. Defendant's unreasonable "interpretation" cannot form the basis for a claim that the interrogatory is unreasonable[2]. Thus, there is no basis for claiming that the interrogatory is "overbroad".

As above explained, plaintiff is entitled to discovery concerning BNG's financial status which requires that defendant respond to document request no. 11 and to interrogatory 4 (e).

Defendants' reliance on the Swarensky, case is likewise misplaced for the reasons given in part B.1, above.

---

[2] Indeed, if defendants complied with Local Rule 9 before filing their motion, this item could have been resolved without intervention by the court. Instead defendants chose to argue this incredibly broad interpretation that renders the possibility to compromise meaningless Plaintiff does not seek every bill or invoices but simply the identification of documentation demonstrating the financial status of the firm.

WHEREFORE, plaintiff seeks an order overruling the Motion for a Protective Order and an order compelling the answers and production of documents and any relief as the court may deem just and proper.

Respectfully Submitted,
Counsel for the Plaintiff,

By: ______________________

Eliot B. Gersten, Esq.
Gersten & Clifford
214 Main Street
Hartford, CT 06106
Juris No.: 304302
Telephone: (860) 527-7044
Facsimile: (860) 527-4968
His Attorneys

**CERTIFICATION OF SERVICE**

I hereby certify that a copy of the foregoing was mailed, via first class mail, postage prepaid, this 17th day of February, 2004 to:

Bernard E. Jacques, Esq.
Pepe & Hazard LLP
225 Asylum Street
Goodwin Square
Hartford, CT 06103-4302
Telephone No.: (860) 522-5175
Facsimile No.: (860) 522-2796

Eliot B. Gersten , Esq.

Exhibit A

VOL 149 PG 084

RECEIVED BLOOMFIELD PROBATE COURT

State of Connecticut
Department of Revenue Services

**SUCCESSION TAX ASSESSMENT**

| Estate of: | Probate Court, District of: | File Number |
|---|---|---|
| HOPFER, KATHE, | BLOOMFIELD | H-58755 |

P MICHAEL MARGOLIS ESQ
BUTLER NORRIS AND GOLD
234 PROSPECT AVE
HARTFORD, CT 06106-2041

Make check payable to:
**Commissioner of Revenue Services**
and mail to:
Inheritance Tax Section
PO Box 2972
Hartford CT 06104-2972

Phone Inquiries: 860-297-5737

The amount of the Connecticut succession tax on all taxable transfers made by this decedent and reported to date is shown below. The amount shown is final unless a written application for a hearing setting forth in detail any objections to this computation is filed with the probate court and the Commissioner of Revenue Services within sixty days of this notice. In that case the decree of the probate court entered after due hearing will determine the tax. If the amount shown is based upon a compromise under the provisions of Conn. Gen. Stat. Section 12-355, the computation is final.

Date of Assessment: 06/18/2001
Corrected Original

| | | |
|---|---|---|
| Schedules 4 - 6 of Form S-1 | $701.00 | |
| Schedules 7 – 11 of Form S-1 | $730,922.87 | |
| Increases by agreement | $174,071.42 | |
| | $0.00 | |
| | Gross Taxable Estate | $905,695.29 |
| Deductions claimed per Form S-1 | $13,744.60 | |
| | $0.00 | |
| Excluded deductions | $0.00 | |
| | $0.00 | |
| Deductions allowed | | $13,744.60 |
| | Net Taxable Estate | $891,950.69 |
| **Class** | **Amount Passing to Class** | **Tax on Class** |
| Class AA | $0.00 | $0.00 |
| Class A | $891,950.69 | $67,119.26 |
| Class B | $0.00 | $0.00 |
| Class C | $0.00 | $0.00 |
| Exempt Organization | $0.00 | None |
| Per compromise | $0.00 | $0.00 |
| | Total Tax Due | $67,119.26 |
| Interest at 12.00% per year from 06/16/1997 to 06/18/2001 on | $17,424.55 | $8,538.03 |

| | | |
|---|---|---|
| | Total Amount Due | $75,657.29 |
| Per Month or Portion of a Month, Add Interest of $174.25 after 07/16/2001 | Less payment on account | $31,076.71 |
| | Less Gift Tax Credit | $18,618.00 |
| | BALANCE DUE | $25,962.58 |

| | |
|---|---|
| Total Refund Due | $0.00 |

Remarks:

INCREASES PER FEDERAL AUDIT

If you have any questions regarding this assessment please call DOROTHY LEIBOWITZ at (860)-297-5726

VOL 149 PG 080

RECORDED: 4-3-97

AFFIDAVIT IN LIEU OF ADMINISTRATION
PC-212 REV. 12/91
(PRC-54)

STATE OF CONNECTICUT
COURT OF PROBATE
*[Type or Print in black ink. File in duplicate.]*
*[Use Second Sheet, PC-180, (PRC-17) for additional data.]*

| | |
|---|---|
| TO: COURT OF PROBATE, DISTRICT OF BLOOMFIELD DISTRICT NO. 011 | |
| IN THE MATTER OF *[Include all names and initials under which any asset was held.]* KATHE HOPFER<br>Hereinafter referred to as the decedent. | SOCIAL SECURITY # 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 |
| DECEDENT'S RESIDENCE AT TIME OF DEATH *[Include full address.]* 21 REGENCY DRIVE, BLOOMFIELD, CT 06002 | DATE OF DEATH 12/16/96 |
| PETITIONER *[Name, address, zip code and telephone number.]* HELGA ROME, 11 GARRISON TERRACE, BLOOMFIELD, CT 06002 (860) 242-4885 | RELATIONSHIP TO DECEDENT, if any Daughter |

THE PETITIONER under oath hereby applies to the court of probate for authorization to sell and/or transfer personal property of the decedent without administration or probate of will and states that:

☐ The petitioner is the surviving spouse of said decedent.

☒ There is no surviving spouse, and the petitioner is a next of kin of said decedent.

☐ There is no surviving spouse or next of kin, or such surviving spouse or next of kin has refused such affidavit, and the petitioner is a suitable person with sufficient interest for the following reason ..........

No application for settlement of the estate is pending in any court of probate.
The decedent died owning no *real* property, other than survivorship property, if any, in the State of Connecticut.
The market value of the personal property listed below does not exceed $20,000.

The decedent ☐ *did* ☒ *did not* receive aid or care from the State of Connecticut. *[If affirmative, check appropriate box(es).]*

☐ State of Connecticut ☐ Veterans Home & Hospital.

☐ The decedent left a will dated .......... which is not being presented for probate.

☒ The decedent left no will.

The decedent died owning the following personal property *(list specific identifying numbers or information)*:

| DESCRIPTION | FAIR MARKET VALUE |
|---|---|
| Household Furnishings | $500.00 |
| U.S. Treasury 1996 Tax Refund | $184.00 |
| State of Connecticut 1996 Tax Refund | $17.00 |
| Total | $701.00 |

According to the information and belief of the petitioner, all debts of the decedent and claims against the estate are as follows:

| NATURE OF CLAIM | CLAIMANT | AMOUNT *[If paid, indicate by whom.]* |
|---|---|---|
| Funeral Expenses | Beth Olam Levayah Funerals of Greater Hartford | $5,439.60 (Paid by Helga Rome) |
| Debts Due for Last Sickness | Rabbi Weiss | $250.00 (Paid by Helga Rome) |
| Other Claims | | |

☐ The funeral director has not been paid, and the court is requested to order payment from the assets listed above by a) direct transfer or b) sale of assets.

☐ The creditors to whom debts are due for the last sickness have not been paid, and the court is requested to order payment from the assets listed above by a) direct transfer or b) sale of assets.

☒ The above listed debts or claims have been paid in the manner prescribed by §45a-392 of the Connecticut General Statutes.

☐ Listed assets exceed listed debts and claims, and all heirs-at-law and proposed distributees are listed on form PC-212A attached hereto.

☐ One or more of the children listed on PC-212A are *not* also children of the surviving spouse.

Any attachment hereto is made a part hereof.

WHEREFORE, the undersigned, in lieu of filing an application for administration or probate of will, petitions the court of probate to issue a decree authorizing the holder of such property or the registrant thereof, including the authority issuing the registration, to transfer the same or pay the amount thereof and/or to sell the same and pay the proceeds thereof to the undersigned or as indicated above.

Helga Rome
Helga Rome sole survivor Petitioner's Signature

Helga

SUBSCRIBED AND SWORN TO BEFORE ME this 26 day of Mar - 1997

[signature]
~~Judge, Ass't Clerk, Notary Public~~, Comm. Sup Ct.

AFFIDAVIT IN LIEU OF ADMINISTRATION

STATE OF CONNECTICUT
DEPARTMENT OF REVENUE SERVICES
TWENTY-FIVE SIGOURNEY STREET HARTFORD, CONNECTICUT 06106

PG 085

Process Date: 12/23/2002
Payment Date: 12/19/2002

DEC

P MICHAEL MARGOLIS ESQ
BUTLER NORRIS AND GOLD
234 PROSPECT AVE
HARTFORD, CT 06106-2041

Re: Estate of HOPFER, KATHE,
File Number **H-58755**

Dear P MICHAEL MARGOLIS ESQ:

**Final Receipt**

The Department of Revenue Services has received your remittance of $131.99 as full payment of the balance due for the succession tax and interest. The gross estate or the amount of additional assets reported is $905,695.29 .

Please contact the probate court to determine whether any further action is required to settle this estate.

If you have any questions, please contact me between the hours of 8:00 a.m. and 5:00 p.m., Monday through Friday.

John M Dunham
First Assistant Commissioner
Telephone: (860) 297-5744
Fax: (860) 297-5775

cc: BLOOMFIELD PROBATE COURT

C-21B (Rev. 3/99)

**AFFIDAVIT**

I, Joel M. Ellis, do swear, depose and say:

1. Based upon my discussions with a descendant of Kathe Hopfer, I understand that she was a Holocaust survivor who had a property reparations claim against East Germany; that Attorney Martin P. Gold, on her behalf, retained the services of a New York City attorney, David J. Roland, who specializes in East German property claims; that Attorney Roland was successful in obtaining a substantial recovery; that he was paid a substantial fee by Kathe Hopfer; that Attorney Gold claimed a substantial payment but prevailed upon Kathe Hopfer to make the payment in the form of a gift, either to Attorney Gold or to his wife.

2. Although I have not seen the supporting schedules of Kathe Hopfer's Connecticut succession tax return which could provide direct evidence of such a gift, I note that in the probate document entitled Succession Tax Assessment, there is an entry for a gift tax credit of $18,618.00. This means that prior to Kathe Hopfer's death she made a gift of about $400,000.00.

3. The probate documents attached to the accompanying memorandum in opposition to defendants' motion for a protective order are true copies of probate documents I obtained from the Bloomfield Probate Court.

4. When I worked at Butler, Norris and Gold, it was common knowledge that Judith Gold, the wife of Martin P Gold, for many years was the owner of the firm's building at 254 Prospect Avenue, Hartford, Connecticut; and that the firm was her tenant and paid rent to her. As far as I know, this continues to be the existing arrangement.

Joel M. Ellis

Subscribed and sworn to before me, this 17th day of February, 2004.

Steven Katz

~~Notary Public~~/Commr. of the Superior Court